STEAM STONE-CUTTER Co. *v.* WINDSOR MANUF'G Co. and others.

*(Circuit Court, D. Vermont. ——, 1880.)*

1. CONTEMPT—REV. ST. § 725.—The meddling with property, constructively attached, does not constitute a contempt under section 725 of the Revised Statutes.

In Equity, at Chambers.

*Prout & Walker,* for motion.

*E. J. Phelps* and *J. B. Phelps, contra.*

WHEELER, D. J. This is a motion for an attachment for contempt. The plaintiff, at the October term, 1870, obtained a decree against the Windsor Manufacturing Company, of which Ebenezer G. Lamson is president, and Eastman E. Lamson is clerk and treasurer, and against Ebenezer G. Lamson, for an account of profits of infringement of a patent, and immediately afterwards applied to the court by petition, setting forth in substance that the defendants were about to dispose of their property, "and that unless they can by writ of sequestration fix a lien" thereon, said litigation will be wholly fruitless, "and prayed for a writ of sequestration for the purpose aforesaid;" whereupon a writ was ordered to issue, and did issue, directed to the marshal, commanding him to take, attach, and sequester the goods, chattels, and estate of the defendants, to the value of $40,-000, and detain and keep the same under sequestration, according to law, to respond to the final decree which might be made in the cause, which the marshal served, as appears by his return, by attaching real estate and machinery, which, by the laws of Vermont, may be attached by lodging copies in the town clerk's office, and lodged copies in the town clerk's office of the town of Windsor, where the property was situated, according to the laws of Vermont. It does not appear that the marshal took any other possession of the property. Final decree has been rendered for the recovery of profits to a large amount, and special execution issued thereupon, and the personal property is not to be found, and the real estate has been conveyed and levied upon, and it is alleged that the personal property has been sold by the petitioner, Lovell, and the real estate levied upon by an officer, upon execution instigated by the Lamsons. This meddling with the property is the contempt charged.

It is obvious that these proceedings were intended to merely create a lien upon the property. A sequestration, as known to courts of equity by the common law of their jurisdiction and procedure, was had for the purpose of compelling obedience

to the orders and decrees of the court, and not for the purpose of satisfying the judgments of the court.

The property was taken and held, as the body might be taken and held, until performance of the order, and then the property or the avails of it went back to the owner. The avails might be appropriated to making good the wrong to the party done by the disobedience, as a mode of punishment, but that only by the special order of the court, not by levy and sale, as an execution is levied upon property.

Here was no order or decree binding the defendants, at that time, to do anything. There was to be a decree, but none was perfected. Neither the body nor property could be taken to compel obedience, for there was nothing to be obeyed. The most that could be had was a lien for security merely, like an attachment or mesne process, such as is in use in Vermont and other New England states. So the writ ran to attach the property, and the marshal returned that he attached it, and he did not say that he did any more than to attach it; that is, he created a lien upon it, such as an attachment such as he made would create if made upon well-founded process.

The language of the writ was broad enough to cover an actual seizure and detention of the property by him, and had it been served in that manner he, and after him those who received possession of his property from him, would have it now ready to be dealt with; or, if he or they had been disturbed in such actual possession of the property, a different question on a motion like this would have been presented. The lien he attempted to create, and which he did create, if any, was merely constructive, arising by force of law out of the fact of the lodgment of the copies in the town clerk's office, and not out of his personal presence as an officer of the law where the property was, exercising control over it. His right to the property depended upon the strength of the lien, whatever it was, and not upon his physical control of it in his official capacity. When the property was removed, the right to it by virtue of the lien, if there was any, was violated, but not the official authority of the marshal. He

was not disobeyed nor disturbed. It is a criminal offence to resist an officer, but taking property on which he has a mere constructive lien is not understood to constitute such an offence. He not only had not excluded the parties from possession, but must have understood and expected that they, and not he, were to have the actual possession of the property. The express order of the court run to the marshal and not to the parties. He was commanded to take, attach, and sequester, but they were not restrained further than the actual execution by him of his order would restrain them. That would carry an order to them not to interfere with him so far as he went, but would carry no further order than that.

This proceeding is criminal in its nature, and answering the question whether there is a valid lien or not would not show whether these respondents are liable in this proceeding. They must not only have violated a right, but so have done it as to constitute a contempt, in order to be holden.

The power of the federal courts to punish for contempt is somewhat restricted by section 725, Rev. St., which provides that the power of the courts to punish contempts "shall not be construed to extend to any cases, except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

Here nothing has been done in the presence of the court, or even of any of its officers; what has been done can only be claimed to come within that part of this provision relating to disobedience or resistance to a writ. The intention of the clause seems to be to prevent proceedings against persons in this summary way, in all cases except where the course of judicial proceedings would be actually obstructed. This is not such a case. If anything, a civil right only has been invaded, and that right can be tried according to the usual course. It is doubtful whether such a meddling with property only constructively attached would be such a contempt that

any court would be warranted in proceeding against it as such. Such attachments, and disputes concerning them, are very common under the laws of the state, yet no case is known where any person has been proceeded against as for a contempt, or otherwise criminally, for violating such an attachment. In any view which can be taken of it, the motion must be denied.

Motion denied, without prejudice to any suit.